```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILMINGTON PT CORP.,                                            REPORT AND
                        Plaintiff,                              RECOMMENDATION
            - against -
JUDITH GRAY, et al.,                                            19-CV-1675 (AMD)
                        Defendants.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Wilmington PT Corp. ("Wilmington") brings this action to foreclose its mortgage on property located at 1505 E. 48th Street, Brooklyn, New York (the "Property"); secure payment from the borrowers, defendants Judith Gray, Daniel Ricketts, and Hyacinth Rickets (collectively, the "Borrowers"); and extinguish the lien rights of defendants Boro Fuel Oil Company, Inc. ("Boro"), New York City Parking Violations Bureau ("PVB"), and New York City Environmental Control Board ("ECB" or, together with PVB, the "Agencies"). *See* Docket Entry ("DE") 1 (Complaint). Wilmington now seeks a default judgment. *See* DE 21. Upon a referral from the Honorable Ann M. Donnelly, United States District Judge, I now make this report and respectfully recommend that the court deny the motion without prejudice to Wilmington's right to cure the pleading defect that makes foreclosure unavailable at this stage. As explained below, I conclude that the Complaint does not adequately plead that Wilmington has complied with the requirements for foreclosure under New York's Real Property and Proceedings Law ("RPAPL"). If the court rejects that recommendation, I respectfully make the following alternative recommendations: (1) as to the three Borrowers, grant the motion, order foreclosure and sale of the subject property, and award damages jointly and severally in the total amount of $189,378.24 (consisting of $96,451.34 in unpaid principal and $92,926.90 in accrued interest); (2) as to Boro, grant the motion and enter declaratory relief in the requested form; and (3) as to the Agencies, deny the motion and dismiss the claims against those defendants without prejudice.

I.   Background

   A.   Facts

The following factual recitation derives from the Complaint's uncontested, non-conclusory allegations, the Complaint's exhibits and, solely for purposes of analyzing the requests for relief, the uncontroverted documents Wilmington filed in support of the instant motion. On May 31, 2006, the Borrowers executed a Mortgage Note (the "Note") in which each agreed to repay the sum of $99,000.00 plus interest to Alliance Mortgage Banking Corp. ("Alliance"). As collateral, the Borrowers also delivered a Mortgage dated May 31, 2006 (the "Mortgage"). The Mortgage was duly recorded in the Kings County Clerk's Office on July 1, 2006. After multiple assignments, the Note and the Mortgage were subsequently assigned to Wilmington by Trinity Financial Services, LLC on September 18, 2018. *See* Complaint ¶¶ 12-14 & Exs. B-D.

The Note's terms required the Borrowers to pay Alliance principal plus interest at an annual rate of 13.90 percent, in monthly installments of $1,165.19 starting on July 1, 2006, until June 1, 2036. The Note further provided that the Borrowers' failure to make any installment payment would trigger the holder's right to demand the overdue payment by a certain date, that failure to comply with that demand would result in a default, and that upon default the Borrowers would be required to make immediate payment of the entire principal balance and all accrued interest as well as the holder's costs including reasonable attorneys' fees. *See id.* Ex. C §§ 2-4.

The Borrowers have failed to make any required payments on the Note since June 1, 2013. In mid-December 2018, Wilmington sent a letter to the Borrowers with a notice to cure their default and a notice that failure to cure might result in immediate payment of the entire outstanding principal balance together with all accrued interests thereon. As required by the relevant RPAPL provisions, Wilmington also issued a 90-day pre-foreclosure notice to the Borrowers and filed

2

statements certifying that it had done so with the New York State Department of Financial Services (the "Section 1306 Statements"). *See id.* ¶ 18 & Ex. E; NY RPAPL §§ 1304(1), 306(1).

Of significance to the analysis below, the record reveals a discrepancy as to the precise timing of those notices and statements – a discrepancy that Wilmington glosses over in the text of its Complaint. In its pleading, Wilmington recites that it filed the necessary Section 1306 Statements and refers the reader to the attached Exhibit E but fails to specify the filing date. *See* Complaint ¶ 18. The statements themselves reveal that the filing date was December 17, 2018; moreover, each of the Section 1306 Statements attached to the Complaint includes an assertion that as of that date, Wilmington had already mailed the 90-day pre-foreclosure notices to the Borrowers. *See id.* Ex. E at 51-53.[1] However, that is at odds with the notices themselves: as Wilmington acknowledges in the text of the Complaint, and as is explicit on the face of each notice, Wilmington sent them on December 18, 2018 – a day after it told New York State that it had already done so. *See id.* ¶ 18 & Ex. E at 44-48.

B.      Proceedings

Wilmington filed its Complaint on March 25, 2019, and timely served process on each named defendant. *See* DE 1; DE 8; DE 9; DE; 10; DE 11; DE 12; DE 13. No defendant has appeared. On May 9, 2019, at Wilmington's request, the Clerk entered the default of each defendant. *See* DE 14; DE 15.

Wilmington first moved for a default judgment on June 12, 2019, *see* DE 16, and the court entered an order the same day referring the motion to me. At a hearing on January 24, 2020, I discussed with Wilmington's counsel my concerns about the Complaint's factual discrepancy

---

[1] In the absence of any continuous page numbering for the various documents included together in Exhibit E to the Complaint, I cite the "ECF" page identification numbers assigned by the court's electronic docketing system.

3

regarding the RPAPL notices, which undermined the proposition that Wilmington had satisfied the statutory requirements for foreclosure, as well as problems with Wilmington's damages calculations. *See* DE 19. Wilmington later withdrew its first default judgment motion. *See* DE 20.

Rather than cure the pleading defect by filing an amended Complaint, however, Wilmington simply filed a new motion for default judgment on May 27, 2020. *See* DE 21. In it, Wilmington clarified its request for damages and asked the court to substitute, *nunc pro tunc*, new Section 1306 Statements (included among the new motion papers) for those originally attached to the Complaint, asserting that the original versions were erroneous and that the new ones corrected the originals' error. *See* DE 21. In support of this latest motion, Wilmington submitted its counsel's declaration (to which the purportedly corrected Section 1306 statements were attached as an exhibit), a memorandum of law, a declaration as to damages, and a proposed judgment of foreclosure and sale. *See* DE 21-1 ("Weinreb Decl."); DE 21-7 (proposed substitute Section 1306 Statements); DE 21-2 (memorandum) ("Memo."); DE 21-3 ("Proposed Order"); DE 21-6 ("Devico Decl.").

The court referred the motion to me by order dated June 1, 2020. At a damages inquest on July 10, 2020, I discussed with Wilmington's counsel my concern that the papers submitted in support of its latest motion for default judgment cannot cure the pleading defect in the Complaint: namely, that the pleading itself, including the documents it incorporated, demonstrated an apparent failure to comply with New York's statutory requirements. I offered Wilmington an opportunity to amend its Complaint to assert what it now characterizes as the correct facts, but Wilmington elected not to do so, preferring that I instead issue the instant Report and Recommendation. *See* DE 26.

II.     Discussion

    A.     Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v.*

4

*Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 & n.17 (2d Cir. 2015) (stating that a district court has "discretion to investigate the basis for a plaintiff's claims before deciding whether to grant default judgment"). With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) ("A default ... only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."); *Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"). Accordingly, before considering the issue of damages, I first examine whether the Complaint successfully states a claim for relief.

  B. <u>Claims Against the Borrowers</u>

    1. <u>Standing</u>

Wilmington was not an original party to the Note or the Mortgage but nevertheless has standing to assert the claims before the court. A plaintiff has standing to bring a mortgage foreclosure action "where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *U.S. Bank v. Collymore*, 890 N.Y.S.2d 578, 580 (App. Div. 2009). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.*

A mortgage note is a negotiable instrument that may be transferred via an endorsement on the instrument itself or on an allonge. *See Slutsky v. Blooming Grove Inn, Inc.,* 542 N.Y.S.2d 721, 723 (App. Div. 1989) ("The note secured by the mortgage is a negotiable instrument which requires [e]ndorsement on the instrument itself 'or on a paper so firmly affixed thereto as to become a part thereof' in order to effectuate a valid 'assignment' of the entire instrument.") (citing and quoting N.Y. U.C.C. §§ 3-104, 3-202). An allonge need not be dated to transfer the note. *Bank of Am. v. 3301 Atl.,* 2012 WL 2529196, at *8 (E.D.N.Y. Jun. 29, 2012) ("Dating … appear[s] to be irrelevant to the status of an allonge."); *see also* N.Y. U.C.C. § 3-114. Likewise, an allonge endorsed in blank does not invalidate the transfer of the note but makes "the Note payable to the party in possession of the original Note." *See OneWest Bank v. Guerrero,* 2016 WL 3453457, at *4 (E.D.N.Y. June 7, 2016).

Wilmington has provided a copy of an undated allonge to the Note, endorsed in blank by Trinity Financial Services, LLC. *See* Complaint Ex. E. Though the fact that the allonge is undated and endorsed in blank does not bear upon the validity of the note, Wilmington must still demonstrate that it was the holder of the Note prior to the commencement of the foreclosure action. *See Collymore,* 890 N.Y.S.2d at 580. Having attached the Note and allonge to the Complaint, Wilmington has adequately demonstrated that it held both before asserting the claims on which it now seeks relief.

### 2. Foreclosure

Under New York law, a plaintiff is entitled to foreclosure as a matter of law where it can establish by documentary evidence "(1) the existence of a debt, (2) secured by a mortgage, and (3) default on that debt." *U.S. Bank v. Squadron VCD, LLC,* 504 F. App'x 30, 32 (App. Div. 2012) (citing *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 n.2 (2d Cir. 1997)); *see also BH99 Realty, LLC v. Li,* 2011 WL 1841530, at *3 (E.D.N.Y. Mar. 16, 2011) (report and recommendation), *adopted,* 2011 WL 1838568 (E.D.N.Y. May 13, 2011). Wilmington's Complaint adequately pleads each element of

6

foreclosure: it establishes the existence of a debt (the Note), secured by the Mortgage, and Borrowers' default of their obligation to pay the debt. *See* Complaint ¶¶ 12-13, 17, & Exs. B-C.

### 3. Compliance with RPAPL

Notwithstanding its entitlement to foreclosure in other respects, a plaintiff seeking a default judgment of foreclosure and sale must sufficiently plead strict compliance with RPAPL Sections 1304 and 1306; its failure to do so warrants denial of a motion for default judgment. *See Bank of Am., N.A. v. Reznik*, 9 N.Y.S.3d 592 (Sup. Ct. 2015); *see also Hudson City Savings Bank v. Seminario*, 51 N.Y.S. 3d 159 (App. Div. 2017). As applicable in this case, New York law makes it a condition precedent to foreclosure that Wilmington gave the Borrowers notice at least 90 days before filing this action. *See* RPAPL § 1304; *Deutsche Bank Nat. Trust Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (App Div. 2013). New York law further required Wilmington to file proof that it had mailed such notice with the superintendent of financial services. *See* RPAPL § 1306(1). Finally, the statutory scheme requires Wilmington in filing its Complaint, to affirmatively allege that it complied with the foregoing requirements. *See id.* §§ 1302(1)(b); 1306(1).

Wilmington's Complaint purports to allege that it has complied with the relevant RPAPL provisions and in particular that Wilmington mailed the Section 1306 notices to the Borrowers on December 18, 2018. *See* Complaint ¶ 18. But the court cannot deem that allegation to be true, notwithstanding the defendants' default, because the Complaint itself undermines it: as noted above, the Section 1306 Statements included in the pleading recite that they were mailed on December 17, 2018. *See id.* Ex. E at 51-53. This internal contradiction means that Wilmington's allegation of compliance with the RPAPL requirements is not well-pleaded, and therefore cannot support a default judgment. *See J&J Sports Prods., Inc. v. Brentwood Veteran War Mem'l, Inc.*, 2019 WL 4126469, at *9 n.18 (E.D.N.Y. Aug. 30, 2019) ("A fact is not considered 'well-pleaded' for purposes of a motion for default judgment if it is inconsistent with other allegations of the complaint or with facts of

7

which the court can take judicial notice.'") (citing *NorGuard Ins. Co. v. Lopez*, 2017 WL 354209, at *15 (E.D.N.Y. Jan. 24, 2017)); *J&J Sports Prod., Inc. v. El Ojo Aqua Corp.*, 2014 WL 4700014, at *3 (E.D.N.Y. Aug. 29, 2014) (report and recommendation), *adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (same).

Wilmington has made no attempt to cure this defect by amending its Complaint; indeed, it affirmatively rejected an opportunity to do so. Instead, it attempts to remedy the Complaint's internal contradictions by filing motion papers that include revised versions of the Section 1306 Statements (edited so as to be consistent with the Complaint's text) and asking the court to deem them to have been filed as part of the Complaint *nunc pro tunc*. *See* DE 21-7. Wilmington contends that this procedure will not prejudice the defendants because RPAPL § 1306 merely requires providing information to the Borrowers, which Wilmington has done, and because Wilmington has otherwise substantially complied with the applicable statutory requirements. *See* Memo. at 7. I disagree, as explained below.

First, as a matter of substantive New York law, Wilmington has not successfully established that it satisfied the condition precedent to seeking foreclosure because it has produced two versions of the same Section 1306 Statements with different dates – the original version that would render the Complaint's allegation of compliance with the statutory requirements false, and the later-produced "corrected" version that would render that allegation true. To be sure, a court may disregard a pleading defect that does not prejudice a party's substantial rights. *See* N.Y. C.P.L.R. § 2001; *Aurora Loan Services, LLC v. Weisblum*, 923 N.Y.S.2d 609, 617 (App. Div. 2011) (noting that there could be possible circumstances under which a defect or irregularity in the strict compliance required by RPAPL Article 13 may be so *de minimus* as to warrant ignoring it in an exercise of the court's discretion under CPLR 2001 to avoid dismissal of the action). Thus, for example, where defendants have appeared in a foreclosure action and do not deny receiving the mandatory 90-day

8

pre-foreclosure notice, but nonetheless opposed foreclosure because of a discrepancy with the postmark date on a proof of filing statement, some New York courts have excused the error. *See Bank of New York Mellon v. Dougherty*, 92 N.Y.S.3d 603, 608 (Sup. Ct. 2019); *Castle Peak 2012-1 Loan Trust Mortg. Backed Notes, Series 2012-1 v. Connor, Jr*, 2018 WL 2976055, at *4 (N.Y. Sup. Ct. June 6, 2018). But where a plaintiff has failed altogether to establish proof of compliance with RPAPL 1306, "a condition precedent to commencement of the action," other courts have deemed this sufficient to dismiss. *See Hudson City Savings Bank*, 51 N.Y.S.3d at 160. As the record currently stands, Wilmington simply has not sufficiently established that it satisfied the condition precedent to seeking foreclosure.

Second, and more fundamentally, I cannot agree that attempting to "correct" the record in the way Wilmington attempts will not substantially prejudice the Borrowers. A defendant's default may well reflect an assessment that litigation is futile because the plaintiff's claims have merit and that no effort to defend against it will change the outcome. But it may also reflect a much different assessment: namely, that the plaintiff's pleading is defective and therefore cannot properly produce a judgment even if the defendant defaults. In such circumstances, expending any resources to respond to the defective complaint is inefficient, because if the court correctly applies the law the defendant can expect any default judgment motion to be denied, albeit with leave to amend to correct the pleading defect. If the plaintiff later successfully files and serves a new pleading, the defendant can then decide afresh whether to answer it or default. But if the defendant makes the efficient decision to ignore a defective pleading, and the court permits the plaintiff to cure the defect through some method other than amendment and service of process, the defendant risks an adverse judgment despite never having been served with a pleading that asserted a viable claim. That would unduly prejudice the defendant who makes such rational decisions in reliance on an assumption that the court will apply the law.

9

That is precisely the problem here. By seeking to "correct" its otherwise defective pleading *nunc pro tunc*, rather than simply filing and serving an Amended Complaint, Wilmington creates the risk that the Borrowers will not receive the notice that due process requires before the court enters a default judgment against them.[2] Applicable federal law avoids that risk by precluding the procedural maneuver Wilmington attempts here. Both due process and the Federal Rules of Civil Procedure require Wilmington to properly file and serve the pleading on which it seeks a default judgment. *See* Fed. R. Civ. P. 5(a)(2); *Allstate Ins. Co. v. Yadgarov*, 2014 WL 860019, at *11 (E.D.N.Y. Mar. 5, 2014) ("[D]ue process requires providing clarity to defaulting defendants as to which pleading, if any, they have defaulted on, so that they may properly contest the default, should they so choose.") (citations omitted); *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) ("An amended complaint … supersedes the original and entitles a defendant to raise substantive arguments aimed at 'judicial resolution of the controversy' in a new responsive pleading, even if those arguments were not raised in response to the original complaint."). Departing from those requirements by allowing Wilmington to cure its earlier pleading defect without filing and serving an amended complaint would therefore cause the Borrowers substantial prejudice.

Accordingly, I respectfully recommend that the court deny Wilmington's request to substitute its revised Section 1306 Statements *nunc pro tunc* and I further respectfully recommend that

---

[2] Proceeding in this fashion creates additional risks where a plaintiff seeks in bad faith to avoid litigating the merits of its compliance with the statutory requirements because it fears it would lose to a properly notified defendant. Such an unscrupulous plaintiff might have a strong incentive to avoid that outcome by finding a way, however uncertain, to seek a default judgment without actually filing and serving an amended pleading that included its "corrected" RPAPL statements. Whatever Wilmington's reason for preferring the procedural method it proposes – and I can discern no way in which it is more efficient for Wilmington than simply taking advantage of its opportunity to amend – it creates, if allowed in this case, a risk to defendants' due process rights that can easily be avoided by following proper procedures for amending and serving a complaint.

10

the court deny the motion for default judgment without prejudice to amending the Complaint to cure the pleading defect and properly serving the Borrowers.[3]

        C.        <u>Claims Against Subordinate Lienholders</u>

Wilmington identifies Boro, PVB, and ECB as non-mortgagors who may hold a lien or a judgment on the Property that is subsequent or adverse to Borrowers. *See* Complaint ¶¶ 6-8. Under New York law, the necessary parties to a mortgage foreclosure action include "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). This required joinder of junior lienholders in a

---

[3] If the court rejects the foregoing analysis and allows Wilmington to substitute the revised Section 1306 Statements *nunc pro tunc*, then I would respectfully recommend granting the motion for default judgment against the Borrowers and awarding relief against them as set forth in Wilmington's Proposed Order. With respect to Wilmington's request for monetary damages against the Borrowers, the court must, if it finds liability, conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Wilmington bears the burden of proving its right to the amount of damages claimed. *El Ojo Aqua Corp.*, 2014 WL 4700014, at *2 (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). In an action for foreclosure and sale, damages "should be determined under the terms of the Notes and Mortgage." *E. Sav. Bank, FSB v. Rabito*, 2014 WL 4804872, at *1 (E.D.N.Y. Sept. 10, 2014) (cleaned up) (report and recommendation), *adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014).

  Wilmington seeks a monetary award against Borrowers of $96,451.34 in unpaid principal plus interest from May 1, 2013 to April 3, 2020 at an annual rate of 13.90 percent, or $96,451.34. *See id.* ¶ 3, 7-10, & Loan Summary; Weinreb Decl. ¶ 6; Memo. at 8. The original loan was in the amount of $99,000. *See* Complaint ¶ 12 & Exs. B-C. Wilmington seeks an award of $96,451.34 as the unpaid principal that Borrowers owe on the Note. *See* Devico Decl. ¶ 7 & Loan Summary; Weinreb Decl. ¶ 6. Wilmington has adequately shown the payment history of the loan, and I therefore respectfully recommend that if the court award Wilmington the amount it seeks in unpaid principal if it grants the motion for default judgment.

  Wilmington also seeks default interest on the unpaid principal at an annual rate of 13.90 percent for the period between May 1, 2013 through April 3, 2020 for a total of $92,926.90. *See* Devico Decl. ¶¶ 8-9; Weinreb Decl. ¶ 6; Memo. at 8. The terms of the Note and the established fact of the Borrowers' default support that request, *see* Complaint Ex. C ¶ 2; Devico Decl. ¶¶ 1-6, 9, and Wilmington's calculation of the accrued interest appears to be accurate. I therefore respectfully recommend that the court award Wilmington $92,926.90 in accrued interest if it grants the motion for default judgment.

  Finally, the court need not award anything to Wilmington to reimburse its attorney's fees and costs because Wilmington seeks no such relief. *See* Weinreb Decl. ¶ 9.

11

foreclosure action operates "'to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *6820 Ridge Realty LLC v. Goldman*, 701 N.Y.S.2d 69, 72 (App. Div. 1999) (quoting *Polish Nat'l Alliance v. White Eagle Hall Co.*, 470 N.Y.S.2d 642, 647 (App. Div. 1983)). Failure to join a junior lienholder as a necessary party "leaves that party's rights unaffected by the judgment and sale." *Id.* Courts in this district have found orders of default judgment to be proper against junior lienholders. *See 3301 Atl.*, 2012 WL 2529196, at *14 ("Courts have found that entry of a default judgment under Fed. R. Civ. P. 55 is appropriate where the complaint alleges 'nominal liability – *i.e.*, that any [liens] the Defaulting Defendants may have against the debtor, if liens on the mortgaged property, are subordinate to the plaintiff's lien.'") (quoting *Christiana Bank & Tr. Co. v. Dalton*, 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009); *see also E. Sav. Bank, FSB v. Strez*, 2013 WL 6834806, at *6 (E.D.N.Y. Dec. 20, 2013) (same).

1. Boro

The Complaint contains well-pleaded allegations of Boro's nominal liability by identifying the record number of a specific lien Boro holds against Borrowers and the Property. Specifically, it alleges that Boro "is a necessary party defendant by virtue of being the holder of a UCC against the borrowers and/or property recorded on 7/12/2007, in Instrument No. 2007000355742 in Kings County Registry." Complaint ¶ 6. Boro's default establishes the truth of that allegation (as does a review of publicly available records, *see* Automated City Register Information System ("ACRIS"), www1.nyc.gov/site/finance/taxes/acris.page (last visited October 22, 2020). I therefore respectfully recommend entering a default judgment against Boro in the form Wilmington proposes.

2. The Agencies

New York law further requires that a plaintiff asserting a cause of action against a city agency that affects real property must allege "[d]etailed facts showing the particular nature of the interest in

or lien on the real property and the reason for making" that agency a party to the action. *Id.* § 202-a. The Complaint does not satisfy that requirement in asserting claims against PVB and ECB. It does not allege that either agency holds any particular interest in or lien on the Property itself but offers only boilerplate assertions that each agency "is a necessary party … . to this action because it is a judgment creditor by virtue of … violations filed against the borrower and/or property, which are subordinate to Plaintiff's Mortgage." Complaint ¶¶ 7-8, & Ex. F. Without "detailed facts showing the particular nature of the interest in or lien on the real property[,]" these conclusory allegations do not establish a claim against PVB and ECB under New York law. *See* RPAPL § 202-a.

The two records of judgments attached and incorporated into the Complaint likewise do not suffice to establish either agencies' interest in this matter. *See* Complaint, Ex. F. Neither record establishes what judgment or lien, if any, either agency has on the Property itself. Moreover, the PVB judgment lists a different address for a "Daniel L. Ricketts" than the address of the Property. *See id.* Accordingly, because Wilmington has not stated a viable claim against either agency, I respectfully recommend that the court deny the motion for default judgment against both PVB and ECB and instead dismiss Wilmington's claims against those defendants without prejudice. *See Greathouse,* 784 F.3d at 116 n.17 (rejecting the dissent's position that a default conclusively established defendant's liability); *Taizhou Zhongneng Import & Export Co.*, 509 F. App'x at 57-58 (vacating a default judgment due to reliance on conclusory allegations).

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court deny Wilmington's motion for default judgment without prejudice to its right to file and serve an amended complaint. If the court rejects that recommendation, I respectfully make the following alternative recommendations: (1) as to the three individual defendant borrowers, grant the motion, order foreclosure and sale of the subject property, and award damages jointly and severally in the total

13

amount of $189,378.24 (consisting of $96,451.34 in unpaid principal and $92,926.90 in accrued interest); (2) as to defendant Boro Fuel Oil Company, Inc., grant the motion and enter declaratory relief in the requested form; and (3) as to defendants New York City Parking Violations Bureau and New York City Environmental Control Board, deny the motion and dismiss the claims against those defendants without prejudice.

IV.     Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than October 27, 2020. Any objections to this Report and Recommendation are due by November 5, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
October 22, 2020

                                                                                 /s/
                                                          James Orenstein
                                                          U.S. Magistrate Judge